THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* GERVASIO VALES AVILÉS, Defendant and Appellant.

No. CR-66-17.        Decided June 13, 1968.

*Miguel A. Velázquez Rivera* and *José M. Canals* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Deputy Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The prosecuting attorney filed an information against appellant and another person named Rafael Ángel de León, for an offense of Burglary in the First Degree, consisting in that said defendants on or about August 17, 1962 ". . . illegally, voluntarily, and maliciously, and acting in mutual agreement, entered a building of the University of Puerto Rico at nighttime. That upon entering said building defendants herein had the criminal intent to commit, as they did, larceny or pilferage."

While the members of the jury were being examined as to their capacity for serving as such, the prosecuting attorney requested, and, over the defense's objection, the court ordered, that the information be amended so that instead of stating that defendants entered a building of the University of Puerto Rico, it would read that said defendants, ". . . illegally, voluntarily, and maliciously, and acting in mutual agreement, advised and encouraged the minors Conrado Rodríguez Conde, Jaime Román Batista, and Luis Raúl Figueroa Carmona to enter a building of the University of Puerto Rico at nighttime . . . ."

When the jury was impanelled and sworn in, the amended information was read, and appellant pleaded not guilty. Before the evidence for the prosecution was presented, appellant personally and through his attorneys waived the trial by jury and the trial was heard by the court.

When the evidence was heard, the court found appellant guilty of an offense of Burglary in the First Degree, in the Degree of attempt to commit burglary, and subsequently sentenced him to serve from 1 to 3 years in the penitentiary.

In this appeal the following assignment of errors is made:

"*First Error:* The Superior Court of San Juan erred in admitting in evidence alleged incriminating statements made by defendant without the latter having been warned of his consti-

tutional right not to incriminate himself, and of his right to assistance of counsel at that moment.

"*Second Error:* The Superior Court of San Juan erred in admitting in evidence alleged admissions of defendant even though all the circumstances indicated that said admissions were never made.

"*Third Error:* The Superior Court erred in holding the trial without a new 'arraignment' although the information was substantially amended at the trial.

"*Fourth Error:* The Superior Court erred in unjustifiedly denying defendant the privilege of probation." (Appellant's Brief, pp. 3 and 4.)

The brief summary of the evidence made by the Solicitor General is the following:

"The Prosecuting Attorney offered the testimony of six witnesses. Jaime Román Batista testified that he had seen defendant-appellant together with two other persons on the day of the occurrence. On this occasion, 'defendant, two of his friends, Luis Raúl Carmona, and myself' (Tr. Ev. 42), were talking about the 'robbery we were going to commit in the University of Puerto Rico.' (Tr. Ev. 41.) The witness talked about the plan designed by defendant-appellant and his companions to steal weapons in the Military Department of the University of Puerto Rico, and about subsequent plans to sell the stolen weapons. (Tr. Ev. 41–44.) Defendant-appellant was driving the automobile in which the members of the proposed criminal plot were travelling. (Tr. Ev. 46.) They reached the University at eight-thirty in the evening. They had difficulty in opening the lock of the gate, and defendant-appellant furnished the wrench used for taking out the screws from the tires. (Tr. Ev. 47–48.) They broke the lock of the entrance to the R.O.T.C. building, and they took out 'a bomb, a grenade, and some weapons.' (Tr. Ev. 49.) In short they could not enter the Military Department, since they were followed by the guards of the university. (Tr. Ev. 50.)

"Policeman, Jesús M. Cruz, testified that on the night of the day of the occurrence, he stopped defendant-appellant when he was driving a vehicle between Carolina and Río Piedras (Tr. Ev. 63–64). About five persons were accompanying

defendant-appellant in the vehicle, the witness Jaime Román Batista was among them. (Tr. Ev. 64.)

"The witness, Ángel Luis Labrador, testified that he was a guard of the University. (Tr. Ev. 70.) During the night of the day of the occurrence, he saw when three minors came running out from the buildings of the R.O.T.C. of the University. (Tr. Ev. 70.) They were Jaime Román Batista, Carmelo Rodríguez, and Luis Raúl Figueroa. (Tr. Ev. 71.)

"The witness, Ramón Cruz Rodríguez, a distinguished military officer of the R.O.T.C. testified that when he inspected the storeroom of the Military Department, after he was instructed to do so by one of his superiors, he noticed that the lock was broken and that it had been forced. (Tr. Ev. 75–77.) In the said premises there were no rifles or ammunitions. (Tr. Ev. 78.)

"The witness, Antonio Rodríguez Horta, in charge of the military property, testified that although the door outside of the Military Department had been forced, it was closed because it had a lock and a crossbar inside. (Tr. Ev. 83.)

"Finally, the officer Antonio Díaz de la Cruz' testimony tended to establish that defendant-appellant had made, before him, certain statements as to a burglary in the armory of the University. (Tr. Ev. 96.) He testified as to the seizure performed, 'it appeared later that from the weapons we seized, we recovered those bullets, some blank bullets, an amount of 576, if I remember correctly, and three hollow grenades.' (Tr. Ev. 97.)

"The evidence for the defense consisted essentially in a testimony on the defendant-appellant's reputation, and the testimony of the former prosecuting attorney, Balbino Colón, as to the alleged confessions made by the former, to deny that they were made." (Solicitor General's Report, pp. 2 and 4.)

The first two errors, which refer to the admission in evidence of certain incriminating statements made by appellant,[1] were not committed.

---

[1] The statements are the following:

"What relationship, if any, did he say existed between Rafael Ángel de León and him?

"That he was first cousin of his wife; that he had come from the United States not long ago, and that at the request of that man

■ The trial against appellant was held during the days of March 27 and 28, 1963. Policeman Antonio Díaz de la Cruz interrogated appellant at Police station, and there he made the confessions which are copied in footnote 1. The policeman did not warn him as to appellant's right not to incriminate himself, nor as to his right of assistance of counsel at that moment. However, it appears from the record that said statements were made voluntarily by appellant, without any promises, any deceit or physical, or psychological coercion. Not warning defendant of his absolute constitutional right to remain silent and not incriminate himself did not make defendant's confessions inadmissible at the time the trial was held in this case. *People* v. *Montes*, 64 P.R.R. 306 (1944); *People* v. *Lebrón*, 61 P.R.R. 634 (1943); *People* v. *Méndez*, 54 P.R.R. 184 (1939). It can be said that the doctrine was changed in *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746 (1965), but this case was decided on October 26, 1965, and the doctrine as to the warning on the right of not incriminating himself as well as to the right of assistance of counsel was not available to appellant. *People* v. *Adorno Lorenzana*, 93 P.R.R. 768 (1966).

The third error was not committed either. In admitting the amendment to the information requested by the prosecuting attorney, the judge told the defense that he would

he had gone out to Río Piedras with two other youngsters, and that there in the Barbosa Avenue one of the youngsters alighted from the vehicle and called some youths and presented them to him, and from there they took a ride along the Caguas highway, and that the purpose of the cousin of defendant's wife was to plan the burglary. . . ." (Tr. Ev. 95.)

.        .        .        .        .        .        .        .

"PROSECUTING ATTORNEY:

You say that he told you that it was Rafael Ángel de León's idea . . .?

Of his wife's cousin with those persons.

To burglarize what?

To burglarize the armory of the University and to steal all the weapons they could." (Tr. Ev. 96.)

permit them to confer with certain witnesses and would permit them "also to take any steps, which the defense might deem proper, considering the change in the information. If you need time, the court would grant it gladly."

The defense answered that the defendant's rights would always be prejudiced, but that they would obey the order of the court, taking exception. The judge then informed the jury of the nature of the amendment made to the information and then continued the interrogatory as to their qualifications. When the jury was definitely sworn in, the information, as amended, was read. Defendant pleaded not guilty, and made an objection as to the fact that he was not given the opportunity to interrogate the jury in connection with the amended information.[2]

■ The amendment made to the information did not change the crime with which defendant was charged, although the manner in which said crime was committed was changed. The person who enters a building at nighttime with the criminal intent to commit larceny or pilferage, as well as the person who aids or encourages in the commission of said criminal act, commits the offense of burglary in the first degree. Section 36 of the Penal Code (33 L.P.R.A. § 82); *People* v. *Méndez*, 39 P.R.R. 841 (1929).

■ Assuming that the amendment made to the information was a substantial one, defendant had, at the most, the right to a new arraignment. Rule 38 of the Rules of Criminal Procedure. However, in view of the defendant's attitude when

---

[2] With respect to that objection, the judge stated:
"JUDGE:

The court is aware of the fact that it gave every kind of opportunity, in our opinion, to make questions to the Gentlemen of the Jury, who had not been sworn in, none of them had been, and he was given the opportunity, we used the system of not swearing in the jury in groups, they were sworn in as a whole, particularly to give the defense the opportunities it deemed proper for defendant's best interests." (Tr. Ev. 33.)

the amendment was made, and when the amended information was read again to the jury, and in the absence of any other showing to the contrary, the fundamental rights of defendant were not violated; nor does the action of the court, in admitting the amendment, warrant the reversal of the judgment appealed from.

In the fourth and last error, appellant sustains that if the Report of the Probation Officer recommended that defendant be placed on probation, the court did not have grounds to deny defendant's request to that effect.

█ The authority to render a suspended sentence against a convict rests in the court's sound discretion. On previous occasions we have said that the judges are not bound by the favorable or unfavorable recommendation made by the probation officers. *Fernández* v. *Rivera, Warden,* 70 P.R.R. 859 (1950); *People* v. *Emmanuelli,* 67 P.R.R. 626 (1947).

The facts and circumstances involved in this case having been considered, we believe that the trial court did not abuse its discretion in denying defendant's request to be placed on probation.

For the foregoing reasons, the judgment appealed from will be affirmed.